1  LITTLE FAWN BOLAND (SBN) 240181
   CEIBA LEGAL, LLP
2  35 Madrone Park Circle
   Mill Valley, CA  94941
3  Telephone: (415) 684-7670
   Facsimile: (415) 684-7273
4

5  Attorneys for Plaintiff,
   HOPLAND BAND OF POMO INDIANS
6

7              UNITED STATES DISTRICT COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9               SAN FRANCISCO DIVISION

10

11 HOPLAND BAND OF POMO INDIANS          )  Civil Case No.: 3:18-cv-2528-MEJ
                                         )
12            Plaintiff,                 )
                                         )
13 vs.                                   )
                                         )  NOTICE OF AND EMERGENCY
14                                       )  MOTION TO REMAND AND ISSUE AN
   MCKESSON CORPORATION, et al           )  EXPEDITED RULING; MEMORANDUM
15                                       )  OF POINTS OF AUTHORITIES IN
         Defendants.                     )  SUPPORT THEREOF
16                                       )
                                         )
17                                       )
                                         )  Hearing: July 12, 2018
18                                       )  Time: 10:00 a.m.
                                         )  Courtroom: B, 15th Floor
19                                       )  Judge:  The Hon. Maria-Elena James
                                         )
20 _____)

21        TO THE COURT AND ALL ATTORNEYS OF RECORD:

22        PLEASE TAKE NOTICE THAT on July 12, 2018 at 10:00 a.m., or as soon thereafter as

23 this matter may be heard, in Courtroom B, 15th Floor, located at 450 Golden Gate Avenue, San

24 Francisco, California, Plaintiff Hopland Band of Pomo Indians ("Hopland" or the "Tribe") will

25 move the Court for an expedited order, pursuant to 28 U.S.C. § 1447(c), remanding this cause of

26 action to the Superior Court of the State of California in and for the County of San Francisco,

27

28
                                Motion to Remand

1   and granting attorney fees and costs to Hopland. Hopland moves for remand on the grounds that

2   subject matter jurisdiction is lacking in this case because Hopland has pled only state law claims,

3   and McKesson's federal officer grounds for removal are inapplicable.  Additionally, diversity

4   jurisdiction is not available.  Hopland also seeks an award of fees and costs given the waste of

5   judicial resources resulting from this meritless removal.

6

7

8          Respectfully submitted this 25th day of May, 2018,

9                                              /s/ Little Fawn Boland

10                                             Little Fawn Boland (SBN 240181)
                                               Ceiba Legal, LLP
11                                             35 Madrone Park Circle
                                               Mill Valley, CA 94941
12                                             (415) 684-7670 x101
                                               littlefawn@ceibalegal.com
13

14

15  Additional Counsel for the Plaintiff,
    to be admitted *pro hac vice*:
16

17  J. Nixon Daniel, III                      T. Roe Frazer II
    Mary Jane Bass                            Patrick D. McMurtray
18  John R. Zoesch, III                       Thomas Roe Frazer III
    BEGGS & LANE, RLLP                        FRAZER PLC
19  501 Commendencia Street                   1 Burton Hills Blvd., Suite 215
    Pensacola, FL  32502                      Nashville, TN  37215
20  (850) 432-2451                            (615) 647-6464
    jnd@beggslane.com                         roe@frazer.law
21  mjb@beggslane.com                         Patrick@frazer.law
    jrz@beggslane.com                         trey@frazer.law
22

23

24

25

26

27

28

                              Motion to Remand

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

SUMMARY OF FACTS AND ALLEGATIONS ................................................................. 5

PROCEDURAL HISTORY ................................................................................................. 7

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ........................................................................................................................ 9

   I.   MCKESSON HAS NOT ESTABLISHED A LEGAL BASIS FOR FEDERAL
       OFFICER REMOVAL ................................................................................................. 9

       A.  Federal Jurisdiction Under 28 U.S.C. § 1442 Would be Contrary to the Statute's
            Purpose ................................................................................................................ 10

       B.  McKesson Did Not Act "Under the Direction" of a Federal Officer When
            Engaging in the Challenged Conduct ................................................................. 12

       C.  McKesson Has Not Established a Causal Nexus Between Hopland's Claims and
            the Alleged Acts McKesson Performed Under the PPV Contract ...................... 15

       D.  McKesson Has Not Established That It Has a Colorable Federal Defense .......... 18

           1.   The Government Contractor Defense Does Not Apply ................................. 18

           2.   Hopland Has Standing .................................................................................. 21

           3.   Hopland's Claims Are Not Preempted ......................................................... 22

  II.  THIS COURT SHOULD RULE ON AN EXPEDITED BASIS ...................................... 23

  III. THIS COURT SHOULD AWARD COSTS AND FEES ................................................ 23

CONCLUSION ..................................................................................................................... 24

Motion to Remand

# TABLE OF AUTHORITIES

**Case Law**

*Arness v. Boeing No. Am., Inc.*, 997 F. Supp. 1268, 1270, 1274-1276
(C.D. Cal. 1998)..................................................................................................13,17

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-167 (1989).......................22

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 505, 509, 510 (1988) ...........................18-19

*Cabalce v. Thomas E. Blanchard & Assoc., Inc.*,
797 F.3d 720, 723, 725, 727, 728, 730 (9th Cir. 2015) .....................................................10,13,16

*Colorado v. Symes*, 286 U.S. 510, 517–18 (1932)......................................................................10

*Delahaye v. Asbestos Defendants*,
No. C 09-05504 JSW, 2010 WL 366611, at *3 (N.D. Cal.   Jan. 25, 2010)................................20

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1254 (9th Cir. 2006)..................................18

*Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1195 (9th Cir. 1988)...........................................8

*Florentino v. Owens-Corning Fiberglas Corp.*, No. C 94-2632 EFL, 1994 WL 564731,
at *3 (N.D. Cal. Oct. 6, 1994)…………………………………………………………...22,21

*Freiburg v. Swinerton & Walberg Property Services, Inc.*,
245 F. Supp. 2d 1144, 1150, 1152 (D. Colo. 2002)....................................................................12

*Goncalves v. Rady Children's Hospital San Diego*,
865 F.3d 1237, 1244-1247 (9th Cir. 2017) ..................................................................................18

*Hukkanen v. Air and Liquid Sys. Corp.*,
No. CV 17-2227-JWF(SSx), 2017 WL 1217075, at *2 (C.D. Cal. Mar. 31, 2017) ....................20

*In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 811-813 (9th Cir. 1992) ....................20,21

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-141 (2005) ...............................................23

*McKesson Corp., et al. v. Hembree*, No.
17-CV-00323-TCK-FHM (N.D. Okla. Aug. 11, 2017) (ECF 104)................................................7

*McKesson Corporation v. Hembree*, 2018 WL 340042, at *3 (N.D. Okla., 2018)16-17……15-16

*Moore v. Asbestos Defendants (B*P)*, No VC 10-01638 RS,
2010 WL 2650487, at *4 (N.D. Cal July 1, 2010)......................................................................20

*Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc.*,
647 F. App'x 619, 622 (6th Cir. 2016) ........................................................................................10

*Ruppel v. CBS Corp.*, 701 F.3d 1176, 1183 (7th Cir. 2012)..................................................19

*State of West Virginia et al. v. McKesson Corp.*,
No. 17-CV-03555, slip op. at 2 (S.D. W. Va. Feb. 15, 2018) ...................................................7

*State of West Virginia ex rel. Morrissey, et al. v. McKesson Corp.*,
No. 16-1772, 2017 WL 357307, *1–2 (S.D. W. Va. Jan. 24, 2017).......................................6, 22

*Sullivan v. First Affiliated Secs., Inc.*,
813 F. 2d 1368, 1371 (9th Cir. 1987), cert. denied, 484 U.S. 850................................................8

*Watson v. Philip Morris Cos., Inc.*,
551 U.S. 142, 146-154 (2007) ..........................................................................................10-13,17

*Williams v. Caterpillar Tractor Co.*,
786 F. 2d 928, 940 (9th Cir. 1986), *aff'd*, 482 U.S. 386, 107 S.Ct. 2425,
96 L.Ed.2d 318 (1987) ................................................................................................................8

*Wyeth v. Levine*, 555 U.S. 555, 575, 581 (2009) ....................................................................22

**Statutes**

21 U.S.C. § 301 ..........................................................................................................................22

21 U.S.C. § 903............................................................................................................................21,22

28 U.S.C. § 1331 ...........................................................................................................................6

28 U.S.C. § 1407 ...........................................................................................................................8

28 U.S.C. § 1442 ......................................................................................................................6, 9-12

28 U.S.C. § 1447 ........................................................................................................................5,24

**Rules**

Rule 2.1 of the Rules of Procedure of the United States Judicial Panel
  on Multidistrict Litigation...........................................................................................................8

**Other**

*Manual for Complex Litig.* § 20.131 (4th ed. 2004) ...................................................................8

Motion to Remand

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF FACTS AND ALLEGATIONS

Defendant McKesson Corporation ("McKesson") removed this case to federal court solely as a litigation stall tactic and not for any substantive reasons.[1]  In this disingenuous and desperate effort, McKesson attempts to delay proceedings on the merits of Hopland's claims, evade discovery, and temporarily prevent this lawsuit from proceeding to a jury trial.

The fact that California and the rest of the Country are in the midst of an opioid epidemic is beyond dispute.  The role that opioid pill distributors like McKesson have played in fueling the epidemic has been alleged meticulously by Hopland.  McKesson's culpability and its knowledge thereof are particularly evidenced by the undisputed fact that in late 2017 McKesson paid a $150 million penalty to the federal government in response to an investigation surrounding its opioid diversion.[2]  Hopland's state court complaint alleges similar acts constituting opioid diversion that occurred in the vicinity of Hopland's tribal lands and locations where members of the Tribes and their family members reside.

McKesson's goal in its baseless removal is to cross its fingers and hope that this Court delays in deciding this Motion.  McKesson's strategy is aimed at stripping jurisdiction away from the State court, as McKesson is calculating that the case will be transferred to the multidistrict litigation pending in the Northern District of Ohio (the "MDL"). Under 28 U.S.C. § 1447(c) and for the reasons stated below this Court should enter an expedited ruling to remand this action to the Superior Court of the State of California for the County of San Francisco, and award Hopland its fees and costs incurred in filing this motion.

---

[1] McKesson is the only defendant that has filed a Notice of Removal in this case.

[2] *See* Department of Justice Press Release, Jan. 17, 2017, https://www.justice.gov/opa/pr/mckesson-agrees-pay-record-150-million-settlement-failure-report-suspicious-orders. McKesson was found to have violated applicable law and its own contracts.  (Press release attached as Ex. 1.)

5

Hopland filed its Complaint in the Superior Court of the State of California for the County of San Francisco, on February 13, 2018 (the "Complaint").  The Complaint asserts solely state law claims related to the actions and omissions of major prescription drug opioid manufacturers, distributors, and pharmacies (collectively, "Defendants").  Hopland is a federally recognized sovereign Indian tribe, with all the attendant rights of a sovereign.  The Tribe seeks to have its common law claims determined in California where it is uniquely "at home."[3]

Another federal court has soundly rejected McKesson's assertion of federal question jurisdiction under 28 U.S.C. § 1331 over a similar lawsuit concerning McKesson's failure to "take sufficient steps to monitor, report, and remedy purportedly suspicious shipments of pharmaceuticals into West Virginia." *State of West Virginia ex rel. Morrissey, et al. v. McKesson Corp.*, No. 16-1772, 2017 WL 357307, *1–2 (S.D. W. Va. Jan. 24, 2017).  McKesson's twist on that rejected argument here is that federal jurisdiction is warranted under the federal officer removal statute, 28 U.S.C. § 1442, because Hopland's claims supposedly implicate prescription opioids that McKesson may have supplied through a contract with the United States Government for pricing prescription medications to the Indian Health Service ("IHS") and the Department of Veteran's Affairs ("VA").  *See* Notice of Removal (Doc. 1) ¶¶ 9-11.  McKesson created this new argument ignoring the simple fact that Hopland is *not* claiming damages resulting from diversion through prescription opioids supplied to tribal facilities.  *See, e.g.,* Compl. (Doc. 1-1) at ¶¶ 102-149 (describing the supply chain for prescription opioids and explicitly not mentioning distributors supplying to tribal or federal facilities).  Creative perhaps, yet McKesson has not, and cannot, satisfy the requirements for alleging "federal officer" removal jurisdiction.  McKesson's removal is therefore without merit, and amounts to nothing more than a transparent

_____

[3] Diversity jurisdiction is not available, as the Tribe is not a citizen of a state.  Moreover, Hopland's Complaint alleges only California state causes of action.

Motion to Remand

1    attempt to abuse the federal removal statutes as a subterfuge for transferring this action to the

2    MDL thereby resulting in subordination of Hopland's sovereign rights, delaying the resolution of

3    Hopland's claims, and avoiding adjudication by any California court.[4]

4            As discussed below, McKesson's argument in support of federal officer removal directly

5    contradicts its position in a similar case, the Cherokee Nation case.  There, McKesson, in

6    challenging the jurisdiction of Cherokee Nation tribal court, argued that there was no causal

7    nexus between the common law claims asserted in the Cherokee Nation's complaint and

8    McKesson's distribution of opioids to Cherokee Nation members, stating "[t]he lawful

9    distribution of controlled substances to Cherokee Nation health facilities, which then dispense

10   the drugs, *has no nexus with the Tribe's claims that distributors failed to prevent unlawful*

11   *diversion of controlled substances to individual members of the Tribe.*"  Reply in Support of

12   Plaintiffs' Motion for Preliminary Injunction at 17–18, *McKesson Corp., et al. v. Hembree*, No.

13   17-CV-00323-TCK-FHM (N.D. Okla. Aug. 11, 2017), ECF No. 104 (emphasis added).

14   McKesson's contradictory positions conclusively demonstrate that this removal is nothing more

15   than an improper litigation tactic.

16                                    **PROCEDURAL HISTORY**

17           Hopland filed its Complaint in the Superior Court of the State of California for the

18   County of San Francisco, against the Defendants, alleging only state law claims.  McKesson

19   filed a Notice of Removal on April 27, 2018, asserting exclusive federal jurisdiction solely under

20   the federal officer removal statute.  Defendants Purdue Pharma L.P., Purdue Pharma Inc., and

21   The Purdue Frederick Company Inc. (collectively "Purdue") in step submitted a Notice of

---

[4] Indeed, McKesson has repeatedly attempted to have cases filed against it removed to federal courts in order to reach the MDL; yet, McKesson has failed not once, but *twice*, in its attempt to remove the State of West Virginia's case to federal court and have it transferred to the MDL.  *See State of West Virginia et al. v. McKesson Corp.*, No. 17-CV-03555, slip op. at 2 (S.D. W. Va. Feb. 15, 2018) (ECF No. 22).

Potential Tag-Along Action to the United States Judicial Panel on Multidistrict Litigation (the "JPML") on May 2, 2018, thereby prompting the JPML to issue a Conditional Transfer Order sending Hopland's case to the MDL ("CTO-29"). Hopland filed a timely notice of opposition to CTO-29. Hopland's objection acts to stay transfer of Hopland's case to the MDL. Hopland now seeks to remand its action back to the Superior Court of California, where it was filed. Notwithstanding Purdue's coordinated attempt to have Hopland's case transferred to the MDL, this Court has the express authority to rule on this motion to remand, as Rule 2.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation contemplates that:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.

*See also Manual for Complex Litig.* § 20.131 (4th ed. 2004) ("The transferor court should not . . . postpone rulings on pending motions, or generally suspend further proceedings.").

## LEGAL STANDARD

The party invoking the removal statute bears the burden of establishing federal jurisdiction. *Williams v. Caterpillar Tractor Co.*, 786 F. 2d 928, 940 (9th Cir. 1986) ("the burden of establishing federal jurisdiction falls on the party invoking the removal statute."), *aff'd,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Furthermore, the removal statute is strictly construed against removal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1195 (9th Cir. 1988); *Sullivan v. First Affiliated Secs., Inc.*, 813 F. 2d 1368, 1371 (9th Cir. 1987), *cert. denied,* 484 U.S. 850.

## ARGUMENT

Admitting that Hopland has not asserted a single claim under federal law, McKesson nonetheless argues that federal jurisdiction is proper based on a purported connection, both tenuous and mistaken, between this action and McKesson's unverified provision of prescription opioids to the IHS and VA through its Pharmaceutical Prime Vendor Contract with the United States Government (the "PPV Contract") (Ex. 2).  McKesson's bald assertions fail to meet its burden to demonstrate the propriety of federal jurisdiction.  McKesson's goal in removal is to cause Hopland to lose its right to remand due to the MDL court's determination to stay the resolution of motions for remand.  *See* Minutes of Teleconference and Scheduling Order at 2, *In re Nat'l Prescription Opiate Litig.*, No. 17-MD-2804 (N.D. Ohio Dec. 14, 2017), ECF No. 4 ("MDL Order") (on sixteen pending motions for remand) (Ex. 3).  Hence, absent an expeditious ruling by this Court, Hopland's case will be stalled in the MDL for an indeterminate period of time notwithstanding the lack of proper federal court jurisdiction and in a foreign place where it is not "at home."  Hopland therefore respectfully and urgently requests that this Court hear this matter and rule expeditiously on its motion for remand.

## I.   MCKESSON HAS NOT ESTABLISHED A LEGAL BASIS FOR FEDERAL OFFICER REMOVAL

Under 28 U.S.C. § 1442(a)(1), "a civil action . . . that is commenced in a State court . . . may be removed" to the federal district court wherein the action is pending if the action "is against or directed to" specific persons, including:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The statute must be construed "to give full effect to the purpose[] for which [it was] enacted," which involves a "regard for . . . equality" between the states and the federal government. *Colorado v. Symes*, 286 U.S. 510, 517–18 (1932).[5]  To invoke federal officer jurisdiction in the Ninth Circuit, McKesson must show that: (1) it is a "person" within the meaning of the statute;[6] (2) a causal nexus exists between Hopland's claims and the actions McKesson took pursuant to a federal officer's direction, and; (3) it has a colorable federal defense to Hopland's claims. *Cabalce v. Thomas E. Blanchard & Assoc., Inc.*, 797 F.3d 720, 727 (9th Cir. 2015).  McKesson has failed to show that its sale of prescription opioids pursuant to the PPV Contract can ever satisfy the statute's purpose, or that any of these three requirements have been, or can ever be, satisfied.

### A.      Federal Jurisdiction Under 28 U.S.C. § 1442 Would be Contrary to the Statute's Purpose

McKesson is not by any stretch of the imagination "a federal officer." The federal officer removal statute was meant to "give a chance to the federal officer to defend himself where the authority of the law was recognized" and "where state courts might prove hostile to federal law, and hence to those who enforced that law."  *Watson v. Phillip Morris Companies, Inc.*, 551 U.S. 142, 148 (2007) (citation omitted).  In sum, "the removal statute's 'basic' purpose is to protect

---

[5] Although McKesson cited the Supreme Court's decision in *Symes* for the proposition that the federal officer removal statute should be liberally construed (Notice of Removal (Doc. 1) ¶ 7), the *Symes* Court applied a narrower version of the federal removal statute that protected only those "'acting under or by authority of' federal officers who were themselves 'acting by authority of any revenue law of the United States," and therefore a liberal construction "served Congress's desire to maintain the supremacy of federal law by protecting federal officers 'against peril of punishment for violation of state law,'" *Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc.*, 647 F. App'x 619, 622 (6th Cir. 2016) (citations omitted).  At no point did the Supreme Court blankly support an unfettered liberal understanding of federal officer removal.  Indeed, in citing *Symes*, the Supreme Court later stated that "broad language is not limitless," and that "a liberal construction nonetheless can find limits in a text's language, context, history, and purposes."  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).

[6] For purposes of this motion, Hopland does not dispute that McKesson is a "person" for purposes of federal officer jurisdiction.

---

10

the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arrest' and bring 'to trial in a State court for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting within the scope of their authority.'" *Id.* at 150 (citation omitted).

As such, three of the key considerations for courts in deciding whether removal based on § 1442 properly implicates federal interests are whether: (1) the company's cited relationship with the federal government "ordinarily create[s] a *significant* risk of state-court 'prejudice'" against the company, (2) whether "a state-court lawsuit brought against such a company [is] likely to disable federal officials from taking necessary action designed to enforce federal law," and (3) whether "such a lawsuit [is] likely to deny a federal forum to an individual entitled to assert a federal claim of immunity." *Id.* at 152 (citation omitted) (emphasis added). McKesson's desperate attempt fails in all three instances.

First, there is no chance, let alone a significant one, that McKesson's unknown relationship with the federal government here through a PPV contract—which, at its core, merely provides preferred pricing to purchasers through that contract, PPV Contract 1, at https://www.va.gov/oal/docs/business/nac/ppvContractVA797P-12-D-0001option2.pdf (attached as Exhibit 2)—would create a risk of prejudice or bias against McKesson on the part of the state court judge. In fact, at no point in the Complaint does Hopland reference any relationship between McKesson and the federal government, any facts that would allude to such a relationship, or any facts that would even raise the specter of prejudice against McKesson because of a relationship with the federal government. Second, McKesson cannot assert that the state court action is likely to disable any federal officials. McKesson does not even identify any one as a federal officer. To the contrary, the Complaints have no impact on the PPV Contract.

Moreover, Hopland is not aware of any federal enforcement action that would be hindered if this case were allowed to proceed before the state court.[7]  Third, McKesson is not entitled to assert any federal immunity defense.  There is no case granting federal immunity to a drug distributor. For these reasons, permitting removal on the grounds asserted by McKesson would be contrary to the very purpose of the federal officer removal statute, and McKesson's efforts to convince this Court otherwise should not be countenanced.

### B.  McKesson Did Not Act "Under the Direction" of a Federal Officer When Engaging in the Challenged Conduct

Although the federal officer removal statute was expanded from its original form to apply beyond the revenue context, "nowhere [did Congress] indicate[] any intent to change the scope of words, such as 'acting under,' that describe the triggering relationship between a private entity and a federal office."  *Watson*, 551 U.S. at 149; *see also Freiburg v. Swinerton & Walberg Property Services, Inc.*, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) (explaining that the burden to show that a private party was "acting under" a federal officer when it "engaged in the conduct giving rise to [the] plaintiff's claims . . . is substantive and is not satisfied by incantations of government contractor status alone") (citation omitted).  Rather, because of the statute's focus on protecting and enforcing federal interests, "private actors seeking to benefit from its provisions bear a *special burden* of establishing the official nature of their activities."  *Freiberg*, 245 F. Supp. 2d at 1150 (emphasis added).  McKesson has not come close to its "special burden" here.

The "critical question" for purposes of federal officer removal is "to what extent defendants acted under federal direction *at the time they engaged in the conduct now being sued*

---

[7] Indeed, the federal government has publicly stated its support for lawsuits like the one brought by Hopland, rendering McKesson's attempt to invoke federal court jurisdiction under § 1442 confusing and in conflict with the statute's purpose.  McKesson's use of an obviously inapplicable removal statute to invoke this Court's jurisdiction before immediately attempting to transfer the action to the MDL indicates that its actions are motivated simply by a desire to leave a California forum.

1    *upon.*" *Arness v. Boeing No. Am., Inc.*, 997 F. Supp. 1268, 1275 (C.D. Cal. 1998) (emphasis

2    added) (quotation omitted).  Yet, McKesson's tortious and wrongful conduct does not involve

3    any actions taken by McKesson while under the direction of any federal officer.  To the contrary,

4    McKesson's argument fails due to "the lack of any evidence of the requisite federal control or

5    supervision over the handling" of its distribution of opioids.  *Cabalce*, 797 F.3d at 728.  At no

6    point do Hopland's allegations mention, let alone are they directed at, the relationship between

7    McKesson and a federal officer.  Accordingly, McKesson has not shown and cannot show that

8    the acts for which it is being sued occurred because of any action it was asked to take by the

9    federal government.  To the contrary, the diversion of controlled substances is explicitly

10   forbidden by the federal government, including under the PPV Contract referenced by

11   McKesson.[8]  There is no complaint concerning the pricing of opioid pills.  And, needless to say,

12   opioid diversion by McKesson is certainly not condoned nor sponsored by the federal

13   government, as illustrated by the $150 million fine imposed on McKesson last year for

14   allegations surrounding diversion of controlled substances.

15        McKesson speciously claims it is acting under a federal officer because "the PPV

16   Contract is governed by federal law and regulation and is overseen by a federal contracting

17   officer" (Notice of Removal (Doc. 1) ¶ 9).  In fact, this very basis for federal officer removal was

18   rejected by the U.S. Supreme Court in *Watson*.  *See Watson*, 551 U.S. at 146 (holding that "the

19   fact that a federal regulatory agency directs, supervises, and monitors a company's activities in

20   considerable detail" does not bring "that company within the scope of" having acted under an

21   officer of the United States).  McKesson's shallow claim, if adopted, would federalize every case

---

[8] *See* PPV Contract (Ex. 2) at 6, https://www.va.gov/oal/docs/business/nac/ppvContractVA797P-12-D-0001option2.pdf.

Motion to Remand

involving anything regulated by the federal government, including drugs, medical devices, food additives, water, fuel, etc.

Furthermore, insofar as McKesson bases removal on its claim that it is a private contractor and, pursuant to the PPV Contract, acted under the authority of the federal government in supplying opioid medications to IHS and VA and had an obligation to do so, (*see* Notice of Removal (Doc. 1) ¶¶ 9–11), McKesson's position still fails.  To begin with, the Supreme Court has at least signaled—without deciding that federal officer removal for private contractors is even necessarily appropriate whatsoever—that courts may only allow for removal on the basis that a private contractor is acting under the direction of a federal officer when "the relationship between the contractor and the Government is an unusually close one."  *Watson*, 551 U.S. at 153 (discussing appellant's arguments).  The Supreme Court further explained that the reason why some courts may allow for removal in these circumstances is that the private contractor "is helping the Government to produce an item that it needs" and, in the absence of the private contractor performing its job, that "the Government itself would have had" to produce.  *Watson*, 551 U.S. at 153–54.  This is not the case here, where the PPV Contract merely provides a pricing scheme through which to distribute cheaper pills that have already been manufactured by other companies.  *See* PPV Contract ( Ex. 2) at 9.  Notably, McKesson is not a manufacturer.  To the contrary, McKesson is a drug distributor generally, and the federal government is but one of its many customers.  It supplies drugs to those customers regardless of what that government contract states and in methods left solely to the dictates of McKesson.

### C.  McKesson Has Not Established a Causal Nexus Between Hopland's Claims and the Alleged Acts McKesson Performed Under the PPV Contract

McKesson's weakest link in the federal officer analysis is the lack of a causal nexus to the claims asserted in the Complaint and McKesson's PPV contract.  This is because no one in

the federal government directed McKesson to violate the PPV and federal law by diverting

opioid pills illegally.  For many of the same reasons noted above in connection with McKesson's

failure to show it has acted under the direction of a federal officer when engaging in opioid

diversion, McKesson has not fulfilled its burden in establishing a causal nexus between

Hopland's claims and the actions McKesson performed under the PPV Contract.  Moreover,

McKesson's attempt to use the PPV Contract as a basis for federal removal officer jurisdiction is

contrary to its characterization of the same contract briefed before the Northern District of

Oklahoma in a similar opioid case for the Cherokee Nation.

In the Cherokee Nation case, McKesson characterized the IHS program as the Cherokee

Nation merely "purchas[ing] prescription drugs through a federal program without regard to

which vendors supply and distribute the drugs" and affirmatively argued that "[t]he lawful

distribution of controlled substances to Cherokee Nation health facilities, which then dispense

the drugs, *has no nexus with the Tribe's claims that distributors failed to prevent unlawful*

*diversion of controlled substances to individual members of the Tribe*."  Reply in Support of

Plaintiffs' Motion for Preliminary Injunction at 17–18, *McKesson Corp., et al. v. Hembree*, No.

17-CV-00323-TCK-FHM (N.D. Okla. Aug. 11, 2017), ECF No. 104 (emphasis added).  Based

on this admission alone, this Court should swiftly remand this action.  In addition, the court in

the Cherokee case held that "there is no apparent nexus between the tort injuries alleged . . . and

any consensual relationship with respect to any of the Distributors and pharmacies . . . ."

*McKesson Corporation v. Hembree*, 2018 WL 340042, at *3 (N.D. Okla., 2018). McKesson

should thus be estopped from arguing a nexus in this action.

In any event, the entirety of McKesson's basis for a causal nexus rests on Hopland's

allegation that McKesson and other Distributor Defendants have supplied quantities of

prescription opioids in and around the economic proximity of Hopland with knowledge that the opioids were ultimately being consumed by members of Hopland for non-medical purposes and causing harm to Hopland.  *See* Notice of Removal (Doc. 1) ¶ 3.)  McKesson's argument that this "necessarily implicate[s] McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs, the Indian Health Service, and the facilities of ten other federal agencies and organizations . . . at the direction of the federal government" (Notice of Removal (Doc. 1) ¶ 4), ignores the Complaint's language and stretches the federal officer removal doctrine far beyond its confines, (*see, e.g.,* California Compl. ¶102-149 (in describing the supply chain, explicitly not mentioning distribution to tribal or federal facilities).  Moreover, unlike the Cherokee Nation, Hopland does not own any medical facilities and does not have any prescription drug purchasing programs.

Under Ninth Circuit precedent, McKesson must prove that the conduct alleged by Hopland "was causally connected to the federal government's 'subjection, guidance, or control.'"  *Cabalce*, 797 F.3d at 728 (quoting *Watson* 551 U.S. at 151).  The *Cabalce* case arose out of a deadly explosion of fireworks stored by a contractor on behalf of the federal government in preparation for their eventual destruction.  *Id.* at 723.  Sued in state court for the resulting injuries, the contractor attempted to remove the case, arguing that it had acted "under the color of the United States" in storing the fireworks.  *Id.* at 725.  Problematically, however, the contractor failed to show that it "operated under federal supervision or control" in handling the fireworks, and, particularly, "in developing the destruction plan itself."  *Id.* at 728.  Stated another way, the government relied on the contractor's expertise, not the other way around.  *Id.*  Without such proof, the Ninth Circuit found the contractor's government-related conduct lacked a causal nexus between the government's supervision and the claims raised against it.  *Id.* at 730.

In *Arness*, the Central District of California also rejected removal for lack of a causal nexus.  997 F. Supp. at 1276.  There, a contractor faced personal injury claims due to groundwater contamination, which claims allegedly arose from its manner of disposal of a particular chemical.  *Id.* at 1270.  The contactor presented evidence proving that the government required it to use a particular chemical and that federal officers observed its operations to ensure compliance with government specifications.  *Id.* at 1274.  However, none of those specifications required the contractor to store or dispose of the allegedly offending chemical in any particular manner and, thus, the court found that the contractor was not acting under federal direction when it undertook the storage and disposal at issue.  *Id.* at 1274-755.  Therefore, the contractor failed to establish a causal nexus between the government's requirement that it use the specific chemical and the contractor's conduct in storing and disposing of that chemical.  *Id.* at 1276.

Under this case precedent, McKesson cannot reasonably claim that its PPV contract pricing is connected to Hopland's claims that McKesson negligently diverted opioids.  The VA did not require McKesson to divert opioids, much less distribute them in any particular manner.  Rather, the VA contract sets forth some very general guidelines and focuses primarily on pricing and cost aspects.  More importantly, it has no bearing whatsoever on McKesson's distribution of opioids to private parties.  There simply is no requisite causal nexus between any government-directed activity under the VA contract and Hopland's claims against McKesson here.

Finally, McKesson cites no Ninth Circuit law that helps its argument.  Its cited cases demonstrate how remote McKesson's PPV contract is from the claims asserted by Hopland.  In *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017), the plaintiff's claim arose directly from a health insurance contractor's pursuit of subrogation and placement of a lien at the direction of the U.S. Office of Personnel Management ("OPM").  *Id.* at 1244-1247.

17

Motion to Remand

The action that led to the claim arose from the very conduct that OPM contracted with the health insurer to provide, and, specifically, from other governmental conduct that OPM delegated to the contractor. *Id.* at 1247.  The contractor was obligated to pursue subrogation under its federal contract, and thus, "the challenged acts occurred *because* of what they were asked to do by the Government." *Id.* at 1245, 1247.  Thus, unlike here, the specific and allegedly negligent conduct that caused the plaintiff's alleged injury was directed and mandated by the government.

Likewise, in *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), the court "express[ed] no opinion on the merits of Lockheed's removal." *Id.* at 1254.  No such causal connection or allegation is even remotely present in Hopland's Complaint.  McKesson does not contend that based on its PPV contract, the government required it to distribute opioids in such a manner that caused injury to Hopland herein.

### D.   **McKesson Has Not Established That It Has a Colorable Federal Defense**

Finally, McKesson has not satisfied its burden to show that it has a colorable federal defense. McKesson's defenses—the government contractor defense, lack of standing, and federal preemption, (*see* Notice of Removal (Doc. 1) ¶ 15-17)—are plainly inapplicable.

### 1.   **The Government Contractor Defense Does Not Apply**

In fact, the federal contractor defense is generally meant, in precisely defined circumstances, "to prohibit suit against the *manufacturer*." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 510 (1988) (emphasis added).  It "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design. *Ruppel v. CBS Corp*, 701 F.3d 1176, 1183 (7th Cir. 2012).  McKesson, a non-manufacturer, has not explained how the doctrine, as articulated in *Boyle* and its progeny, might apply here.

The Supreme Court's decision in *Boyle* provides a useful guide to the parameters of the government contractor defense. The key to a private party invoking the government contractor defense is that the conduct leading to the claim must arise from "an independent contractor performing its obligation under a procurement contract, rather than an official performing his duty as a federal employee, but there is obviously implicated the same interest in getting the Government's work done." *Boyle*, 487 U.S. at 505. The Court provided a useful example of when the defense would not apply, and also illustrates the inapplicability of preemption here:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*Id.* at 509. Thus, in *Boyle,* the Supreme Court found the defense applied because the federal government's demands and requirements under the contract ran contrary to state law. *Id.* But that is not the case here, and as the quoted language indicates, McKesson's situation requires a finding that the government contractor defense is flatly inapplicable.

Moreover, the Ninth Circuit does not permit the government contractor defense in situations like McKesson raises here. This is because the products supplied by McKesson "were not specialized items of military equipment but were, instead, goods sold on the ordinary commercial market." *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992). Thus, in the Ninth Circuit, "[w]here the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply." *Id.* at 811. As the court explained, the rationale underlying this limitation seeks to

protect the interests of contractors hired by the military to produce equipment resulting from the military's "highly complex and sensitive decisions." *Id.* On the other hand, those concerns do not exist for readily available commercial market items, "which have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of end-users in the private sector." *Id.* In addition, manufacturers of commercial items have already factored the risk of tort liability costs into their pricing. *Id.*

California federal district courts have repeatedly affirmed this "military equipment" limitation to the government contractor defense, and have denied removal attempts as a result. *See, e.g., Hukkanen v. Air and Liquid Sys. Corp.*, No. CV 17-2227-JWF(SSx), 2017 WL 1217075, at *2 (C.D. Cal. Mar. 31, 2017) (denying removal for failure to demonstrate a colorable government contractor defense and declaring that "in the Ninth Circuit, the government contractor defense is only available to contractors who design and manufacture military equipment"); *Delahaye v. Asbestos Defendants*, No. C 09-05504 JSW, 2010 WL 366611, at *3 (N.D. Cal. Jan. 25, 2010) (denying removal where asbestos manufacture failed to prove differences between its commercial product and that sold to the military); *Moore v. Asbestos Defendants (B*P)*, No VC 10-01638 RS, 2010 WL 2650487, at *4 (N.D. Cal July 1, 2010) (denying removal because "none of the evidence presented demonstrates that the brokered Unibestos was created to fulfill a unique military need, or that the government exercised 'direct and detailed' control over the design and manufacture of the insulation"); *Florentino v. Owens-Corning Fiberglas Corp.*, No. C 94-2632 EFL, 1994 WL 564731, at *3 (N.D. Cal. Oct. 6, 1994) (denying removal and finding that "[t]here is simply no indication and no evidence that these products were made more dangerous than those on the open market simply because the government ordered them to be designed in a particular way").

Motion to Remand

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

But even if this defense was theoretically available to McKesson—which merely distributes drugs to the VA as well as countless commercial manufacturers—McKesson cannot possibly demonstrate a conflict between its IHS and VA contract requirements and its state law duties of which Hopland has alleged breaches and violations.  *See In re Hawaii Federal Asbestos Cases*, 960 F.2d at 812; *Boyle*, 487 U.S. at 589; *see also Florentino*, 1994 WL 564731, at *3 ("No defendant has produced evidence that it presented specially designed products to the government under federal orders or specifications that directly conflicted with the state law duty upon which the defendants are now being sued.").  Without this "crucial element" of the military contractor defense, much less in the absence of evidence that the government imposed any particular specifications, McKesson cannot assert the defense.  *In re Hawaii Federal Asbestos Cases*, 960 F.2d at 813.  McKesson could have fully complied with both state laws while performing its VA contract obligations.  It chose not to, and it cannot now cloak itself in a federal contract to avoid the consequences of its numerous state law violations.

### 2.     Hopland Has Standing

McKesson also fails to demonstrate a colorable standing defense.  McKesson erroneously claims that Hopland seeks "to challenge McKesson's compliance with the federal Controlled Substances Act, 21 U.S.C. § 903 ("CSA").   Notice of Removal (Doc. 1) ¶ 16.  In support of this claim, however, McKesson points solely to allegations in Hopland's common law count grounded in nuisance (*see, e.g,.* ¶ 185 of the Hopland Complaint), which does not raise or attempt to raise a cause of action under the federal CSA.

### 3.     Hopland's Claims Are Not Preempted

McKesson's preemption argument is even more terribly contorted. The federal CSA, expressly provides that "[n]o provision of [the federal CSA] shall be construed as indicating an

1   intent on the part of Congress to occupy the field in which that provision operates, including

2   criminal penalties, to the exclusion of any State law on the same subject matter which would

3   otherwise be within the authority of the State."  21 U.S.C. § 903.  Congress did not intend for the

4   CSA to preempt state law claims predicated on harms arising from the distribution of controlled

5   substances.  *See Wyeth v. Levine,* 555 U.S. 555, 575 (2009); *see also Bonito Boats, Inc. v.*

6   *Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-167 (1989) ("The case for federal preemption is

7   particularly weak where Congress has indicated its awareness of the operation of state law in a

8   field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate

9   whatever tension there [is] between them.").  In *Wyeth*, the Supreme Court held that federal

10  regulation of prescription drugs under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §

11  301 *et seq.*, did not preempt state law failure to warn claims even though there was no

12  pronouncement by Congress, such as that present here, that preemption was not intended.  As

13  *Wyeth* instructs, preemption is not a defense where state law "do[es] not stand as an obstacle to

14  the accomplishment of Congress' purpose."  *Wyeth*, 555 U.S. at 581.  Such is the case here.

15      McKesson has also previously acknowledged, in connection with a similar action based

16  on similar claims, that "it 'does not contend that federal law completely preempts plaintiffs'

17  claims,'" *State of West Virginia ex rel. Morrissey*, 2017 WL 357307, at *4 n.3 (citation omitted).

18  Again, McKesson says one thing in one federal court and another in this Court, as if the end

19  justifies the means.  McKesson simply has not cited to any case law where the federal CSA was

20  applied as a defense to preempt similar state law claims.  Therefore, for this reason as well as the

21  others discussed above, this Court should grant Hopland's motion to remand.  McKesson's

22  grounds for removal are entirely without merit.

## II.     THIS COURT SHOULD RULE ON AN EXPEDITED BASIS

McKesson's notice of removal, albeit meritless, has been filed to deprive Hopland of its right to have its actions expeditiously heard before the court of its choosing, because in conjunction with removal of this action, a coordinated Notice of Potential Tag-Along Action was filed with the JPML to prompt entry of a Conditional Transfer Order to the MDL. The Notice of Potential Tag-Along Action, *In re Nat'l Prescription Opiate Litig*, No. 17-MD-2804 (N.D. Ohio April, 23 2018), ECF No. 1254, demonstrates that Defendants are abusing the removal process as a means to a clearly defined end.  Given that the MDL 2804 Court has affirmatively stated that it will not rule on motions to remand, (MDL Order at 2 (Ex. 3))—a statement McKesson and Purdue are well aware of—it is apparent that McKesson and others solely seek to essentially foreclose Hopland's ability to proceed with its proper state court Complaint and doom it to a lesser status in an MDL in which it does not belong and in a jurisdiction where Hopland has no sovereign lands or connections.  Because failure to decide Hopland's motion to remand will have lasting implications if the case is transferred to the MDL, Hopland respectfully and urgently requests that this Court issue an expedited ruling on this Motion to Remand so as to prevent transfer of Hopland's case prior to a ruling on the merits of this motion.

## III.    THIS COURT SHOULD AWARD COSTS AND FEES

"The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).  Therefore, if it appears that the federal court lacks jurisdiction and the case is remanded, the district court has broad discretion to award a plaintiff costs and fees under 28 U.S.C. § 1447(c).  The court may award fees where the removing party lacked an objectively reasonable basis for removal.  *Id.* at 141.  Here, McKesson has wasted (and will continue to waste) Hopland's and the judiciary's time and resources by attempting to recast itself as a private party entitled to the protection of the

federal officer removal statute for purposes of this action.  As a result, and because McKesson has failed to articulate any objectively reasonable—or even subjectively reasonable—basis for removal, costs and fees should be awarded to Hopland.

<u>**CONCLUSION**</u>

For these reasons, Hopland respectfully requests that this Court consider and rule on this motion on an expedited basis, and that Hopland's case be remanded to the Superior Court of the State of California for the County of San Francisco, with an award of costs and fees to Hopland.

Respectfully submitted this 25th day of May, 2018,

/s/ Little Fawn Boland

Little Fawn Boland (SBN 240181)
Ceiba Legal, LLP
35 Madrone Park Circle
Mill Valley, CA 94941
(415) 684-7670 x101
littlefawn@ceibalegal.com

Additional Counsel for the Plaintiff,
to be admitted *pro hac vice*:

J. Nixon Daniel, III
Mary Jane Bass
John R. Zoesch, III
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL  32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com
jrz@beggslane.com

T. Roe Frazer II
Patrick D. McMurtray
Thomas Roe Frazer III
FRAZER PLC
1 Burton Hills Blvd., Suite 215
Nashville, TN  37215
(615) 647-6464
roe@frazer.law
Patrick@frazer.law
trey@frazer.law

Motion to Remand

## CERTIFICATE OF SERVICE

I hereby certify that, on May 25, 2018, a true and correct copy of:

**NOTICE OF AND EMERGANCEY MOTION TO REMAND AND ISSUE
AN EXPEDITED RULING; MEMORANDUM OF POINTS OF
AUTHORITIES IN SUPPORT THEREOF**

was served on Counsel for Plaintiff electronically through CM/ECF.

DATED: May 25, 2018

*/s/ Little Fawn Boland*

Little Fawn Boland
Ceiba Legal, LLP
35 Madrone Park Circle
Mill Valley, CA 94941
 (415) 684-7670 x101
littlefawn@ceibalegal.com